Slip-Op. 19-24

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>    and<br><br>AK STEEL CORPORATION, STEEL DYNAMICS, INC., ARCELORMITTAL USA LLC, NUCOR CORPORATION, UNITED STATES STEEL CORPORATION,<br><br>        Defendant-Intervenors. | Before: Mark A. Barnett, Judge<br>Court No. 16-00228 |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's Remand Redetermination in the antidumping duty investigation of certain cold-rolled steel flat products from the Republic of Korea.]

Dated: February 26, 2019

J. David Park, Henry D. Almond, Daniel R. Wilson, and Sylvia Y. Chen, Arnold & Porter Kaye Scholer LLP, of Washington, DC, for Plaintiff.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel on the brief was James H. Ahrens II, Attorney, Office of the Chief Counsel

for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Stephen A. Jones and Daniel L. Schneiderman, King & Spalding, LLP, of Washington, DC, for Defendant-Intervenor AK Steel Corporation.

Roger B. Schagrin and Christopher T. Cloutier, Schagrin Associates, of Washington, DC, for Defendant-Intervenor Steel Dynamics, Inc.

Paul C. Rosenthal, R. Alan Luberda, Kathleen W. Cannon, Grace W. Kim, and Joshua R. Morey, Kelley Drye & Warren LLP, of Washington, DC, for Defendant-Intervenor ArcelorMittal LLC.

Alan H. Price, Timothy C. Brightbill, and Chris B. Weld, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Nucor Corporation

Thomas M. Beline, Jack A. Levy, and Sarah E. Shulman, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Defendant-Intervenor United States Steel Corporation.

Barnett, Judge: This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") redetermination upon remand in the antidumping duty investigation of certain cold-rolled steel flat products from the Republic of Korea. *See* Confidential Final Results of Redetermination Pursuant to Court Remand ("Remand Redetermination"), ECF No. 88-1; *see also Hyundai Steel Co. v. United States*, 42 CIT __, 319 F. Supp. 3d 1327, 1357 (2018).[1]

Plaintiff Hyundai Steel Company ("Plaintiff" or "Hyundai Steel") initiated this action challenging certain aspects of Commerce's final determination. *See Certain Cold-Rolled Steel Flat Products from the Republic of Korea*, 81 Fed. Reg. 49,953 (Dep't Commerce July 29, 2016) (final determination of sales at less than fair value) ("*Final Determination*"), ECF No. 39-3, and the accompanying Issues and Decision Mem., A-

---

[1] *Hyundai Steel*, 319 F. Supp. 3d 1327 contains background information on this case, familiarity with which is presumed.

580-881 (July 20, 2016) ("I&D Mem."), ECF No. 39-2;[2] Compl., ECF No. 8.  Plaintiff challenged Commerce's decision to use the facts available with an adverse inference (otherwise referred to as "adverse facts available" or "AFA") to adjust Plaintiff's reported expenses for home market inland freight and warehousing, international freight, and U.S. inland freight on the basis that Plaintiff withheld information requested by Commerce and failed to demonstrate the arm's length nature of the freight and warehousing transactions with its affiliated service providers.  *See* Confidential Mem. in Supp. of Pl. Hyundai Steel Co.'s Rule 56.2 Mot. for J. on the Agency R. ("Pl.'s Rule 56.2 Br.") at 17-32, ECF No. 47; I&D Mem. at 74.  Plaintiff further challenged Commerce's decision to use partial AFA with respect to four specifications of products for which it found that Plaintiff and its U.S. subsidiary reported inaccurate, inconsistent, or unverifiable control numbers ("CONNUMs").[3]  Pl.'s Rule 56.2 Br. at 32-40; I&D Mem. at 63.  Additionally, Plaintiff challenged Commerce's decision to deny Plaintiff a constructed export price ("CEP") offset on the basis that Plaintiff's home market level of trade was not more advanced than its U.S. level of trade.  Pl.'s Rule 56.2 Br. at 40-45; I&D Mem. at 87-89.

---

[2] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 39-5, and a Confidential Administrative Record ("CR"), ECF No. 39-4. The administrative record associated with the Remand Redetermination is contained in a Confidential Remand Administrative Record ("CRR"), ECF No. 90-1, and a Public Remand Administrative Record ("PRR"), ECF No. 90-2.  Parties submitted joint appendices containing record documents cited in their Remand briefs. *See* Confidential Remand J.A. ("CRJA"), ECF Nos. 99 (tabs 1-13), 99-1 (tabs 14-18); Public Remand J.A. ("PRJA"), ECF No. 100. Citations are to the confidential joint appendices unless stated otherwise.

[3] In antidumping duty proceedings, Commerce uses CONNUMs to identify the individual models of products to match U.S. and home market sales.

On June 28, 2018, the court sustained the agency's *Final Determination*, in part, and remanded four aspects. *See Hyundai Steel*, 319 F. Supp. 3d at 1357. First, while the court affirmed Commerce's use of AFA to adjust Plaintiff's reported inland freight expenses, the court remanded Commerce's decision for the agency to explain whether the AFA adjustment encompassed transactions for which Plaintiff did not incur the expense and those for which Plaintiff used unaffiliated freight providers and, if so, why. *See id.* at 1349, 1357. Second, the court remanded Commerce's selection of an AFA margin for one specification of products ("Spec C" sales) and directed the agency to select a margin that is not based on an aberrational sale.[4] *Id.* at 1356, 1357. Third, the court remanded for reconsideration Commerce's determination to deny Plaintiff a CEP offset. *Id.* at 1356-57. Lastly, the court directed the agency to reconsider whether to correct ministerial errors that it previously found to have no effect on Plaintiff's weighted-average dumping margin. *Id.* at 1337 & n.6, 1357.

On October 17, 2018, Commerce filed its Remand Redetermination. Therein, Commerce found that the use of AFA for U.S. sales for which Plaintiff did not incur domestic inland freight was inappropriate; found that the use of AFA for U.S. sales for which Plaintiff incurred domestic inland freight—whether from an affiliated or unaffiliated freight provider—was warranted because it was not possible to distinguish freight providers based on the record before the agency; selected the second highest calculated margin for Hyundai Steel as the AFA margin for Plaintiff's Spec C sales; continued to deny Plaintiff a CEP offset; and determined that the ministerial errors

---

[4] "Spec C" sales are U.S. sales that Hyundai Steel reported as commercial quality, but the agency determined were either drawing or deep drawing quality. *Hyundai Steel*, 319 F. Supp. 3d at 1350.

continue to have no effect on Plaintiff's margin calculation.  Remand Redetermination at 6-12.

Plaintiff filed comments on the Remand Redetermination opposing Commerce's AFA adjustment for sales involving domestic inland freight services provided by an unaffiliated freight provider and the agency's denial of a CEP offset.  Confidential Hyundai Steel Co.'s Comments on Remand ("Pl.'s Opp'n Cmts.") 1, ECF No. 91.  Defendant United States and Defendant-Intervenors[5] support the Remand Redetermination.  See Confidential Def.'s Resp. to Comments on Remand Redetermination, ECF No. 97; Confidential Def.-Ints.' Comments on Remand, ECF No. 95.  For the reasons discussed below, the Remand Redetermination is sustained.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012),[6] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order."  *SolarWorld Ams, Inc. v. United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1314, 1317 (2017) (internal quotation marks and citation omitted).

---

[5] AK Steel Corporation, ArcelorMittal USA LLC, Nucor Corporation, Steel Dynamics, Inc., and United States Steel Corporation.
[6] Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the United States Code are to the 2012 edition.

## Discussion

I. **AFA Adjustment to Domestic Inland Freight Expenses**

　　A. **Commerce's Remand Redetermination and Plaintiff's Challenges Thereto**

On remand, Commerce reconsidered its use of AFA to adjust the freight amounts for Plaintiff's U.S. sales. Remand Redetermination at 6. With respect to those sales for which Plaintiff procured domestic inland freight from unaffiliated freight providers, Commerce determined that there was "no information to establish the percentage of freight charges that were provided by unaffiliated [versus] affiliated suppliers." *Id.* at 7. The freight documentation that Hyundai Steel provided in its initial and supplemental questionnaire responses did not delineate the amount of freight services procured from unaffiliated providers. *Id.* at 7 & nn.33-34 (citing Hyundai Steel's Sec. C Resp. (Nov. 9, 2015) ("Sec. C Resp.") at C-27, CR 113, PR 173, CRJA Tab 9, PRJA Tab 9; Hyundai Steel's Suppl. Sec. B and C Resp. (Dec. 15, 2015) ("Suppl. Sec. B & C Resp.") at 21 & Ex. S-26, CR 191, PR 228, CRJA Tab 11, PRJA Tab 11; Hyundai Steel's Second Suppl. Sec. B and C Resp. (Feb. 2, 2016) ("2nd Suppl. Sec. B and C Resp.") at Ex. 2, CR 288, PR 282, CRJA Tab 12, PRJA Tab 12). Commerce considered Plaintiff's assertion that Plaintiff procured freight services from an affiliated freight provider only for sales originating from its Suncheon plant.[7] *Id.* at 7. Commerce determined, however, that record evidence showed that Plaintiff's affiliated freight provider "was involved in freight logistics planning at both [of] Hyundai [Steel]'s . . . plants." *Id.* at 7 & nn.36-37 (citing Sec. C Resp. at C-27). Moreover, the record did not allow Commerce to

---

[7] Plaintiff had two manufacturing plants: the Suncheon plant and Dangjin plant. Remand Redetermination at 7.

determine the percentage of freight charges provided by unaffiliated providers. Consequently, Commerce was unable to reduce the AFA freight adjustment to account for unaffiliated domestic inland freight. *Id.* at 7-8.

Plaintiff contends that Commerce has contravened the remand order by failing to justify its use of AFA in circumstances in which Hyundai Steel procured domestic inland freight from unaffiliated providers. Pl.'s Opp'n Cmts. at 1-2, 6-7, 10. Plaintiff also challenges Commerce's conclusions as unsupported by substantial evidence. *Id.* at 7-12. Moreover, Plaintiff contends that record evidence establishes the percentage amount of freight transactions with its affiliate. *Id.* at 12-13.

### B.   Commerce's Remand Redetermination is Sustained

As a threshold matter, Commerce complied with the court's remand order. In analyzing the reasonableness of Commerce's AFA adjustments to Hyundai Steel's freight and warehousing expenses, the court stated:

> with respect to Hyundai Steel's arguments that Commerce incorrectly applied AFA with respect to sales for which Plaintiff did not incur domestic inland freight from plant to port or used an unaffiliated freight provider, . . . Commerce has not articulated any justification for this application of AFA and the court cannot provide a justification for the agency. Consequently, the court will remand this limited aspect of Commerce's application of AFA to the agency for reconsideration or further explanation.

*Hyundai Steel*, 319 F. Supp. 3d at 1349. The court ordered Commerce to "reconsider or further explain its application of AFA for domestic inland freight expenses on transactions that incurred no foreign inland freight and on transactions for which domestic inland freight was provided by an unaffiliated freight provider." *Id.* at 1357. On remand, Commerce found its use of AFA in connection with transactions that incurred no foreign inland freight to be inappropriate and explained that, with regard to

the use of unaffiliated freight providers, Hyundai Steel had not documented which sales, or what percentage of sales, used an unaffiliated freight provider. Remand Redetermination at 6-8. Thus, in compliance with the remand order, Commerce reconsidered and further explained its use of AFA concerning domestic inland freight.

Substantial evidence supports Commerce's finding that the record did not establish for which sales, or what percentage of freight services, Hyundai Steel used unaffiliated freight providers. In its Section C questionnaire response, Plaintiff reported that during the period of investigation ("POI"), it "transported merchandise by truck using an affiliated general logistics company, [Plaintiff's affiliate]," and that it "calculated the freight expenses amounts based on the contract prices [Plaintiff's affiliate] charged during the POI." Sec. C Resp. at C-27. Plaintiff did not indicate that its affiliate provided freight services only for the Suncheon plant, nor did Plaintiff reference any unaffiliated freight providers in this narrative response. This statement led Commerce to find that Plaintiff's affiliated freight provider was involved in U.S. sales for merchandise shipped from both the Suncheon and Dangjin plants to the port of exportation. Remand Redetermination at 7 & nn.36-37 (citing Sec. C Resp. at C-27).

Commerce recognized that Hyundai Steel may have used unaffiliated freight providers, but it could not ascertain the percentage of freight charges incurred from unaffiliated providers at either plant in order to limit the AFA adjustment accordingly. *See id.* at 7 & nn.33-34 (citing Sec. C Resp. at C-27; Suppl. Sec. B & C Resp. at 21 & Ex. S-26; 2nd Suppl. Sec. B and C Resp. at Ex. 2).[8] Plaintiff's arguments that the

---

[8] With respect to Exhibit 2 of Plaintiff's February 2, 2016 supplemental questionnaire response, while Plaintiff argues that the freight summary contained therein pertains to "*freight from the factory to warehouse and not factory to port*," Pl.'s Opp'n Cmts. at 9,

record establishes that Hyundai Steel procured freight services from its affiliate exclusively at its Suncheon plant, and that Commerce should have used the AFA adjustment limited to the percentage of sales originating from this plant are unavailing. *See* Pl.'s Opp'n Cmts. at 12-13. Plaintiff references a finding in the verification report wherein Commerce noted that "[Hyundai Steel] stated the only non-[Plaintiff's affiliate] freight provision involved the freight from the Dangjin plant to the Dangjin port." *Id.* at 12 (citing Hyundai Steel Sales Verification Report (May 26, 2016) ("Sales Verification Report") at 39, CR 598, PR 347, CRJA Tab 13, PRJA Tab 13). This statement, however, concerned a single sample sale. Sales Verification Report at 39. As Plaintiff acknowledges, Commerce did not verify that Plaintiff used unaffiliated freight providers for all shipments from the Dangjin plant to the port. *See* Pl.'s Opp'n Cmts. at 12.

Similarly, Plaintiff points to sample freight documentation that it provided to Commerce in Exhibit S-26 of its supplemental section B and C questionnaire response. *Id.* at 8-9, 10. That exhibit was submitted in response to Commerce's request for documentation regarding Plaintiff's freight transactions *with Plaintiff's affiliated freight provider* for shipments of subject merchandise from each plant to each port of exportation. *See* Suppl. Sec. B & C Resp. at 21. Exhibit S-26 is only partially translated and does not appear to indicate whether the freight provider was affiliated with Hyundai Steel. *See id.*, Ex. S-26. In any case, the record evidence indicating that Hyundai Steel's affiliated freight provider was involved in some shipments from both plants,

---

the exhibit indicates that Plaintiff made payments to its affiliate for shipments from the Dangjin plant to the Dangjin port, *see* 2nd Suppl. Sec. B and C Resp, at 2-3 & Ex. 2 at ECF p. 184 (showing departures from "Dangjin" and destinations to "Dangjin (A dock)" and "Dangjin Godae dock").

combined with a lack of documentation of what percentage of shipments utilized unaffiliated freight providers, is sufficient to support Commerce's determination that it could not adjust its use of AFA to account for the use of unaffiliated freight providers.[9]

## II. CEP Offset

### A. Legal Framework

Commerce must establish normal value "to the extent practicable, at the same level of trade as the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(B)(i). The U.S. Court of Appeals for the Federal Circuit has construed the term "same level of trade" to mean "comparable marketing stages in the home and United States markets." *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1305 (Fed. Cir. 2001). When Commerce is unable to find sales in the home market at the same level of trade as the sales in the U.S. market, it will compare sales at different levels of trade and account for that difference by making a level of trade adjustment or granting a CEP offset, depending on the circumstances. *See id.*

Commerce makes a level of trade adjustment when the difference in the level of trade "(i) involves the performance of different selling activities; and (ii) is demonstrated to affect price comparability, based on a pattern of consistent price differences between the sales at the different levels of trade." 19 U.S.C. § 1677b(a)(7)(A); *see also* 19 C.F.R. § 351.412(a)-(b); *Micron Tech.*, 243 F.3d at 1305. When the home market level of trade constitutes a more advanced stage of distribution than the level of trade of the

---

[9] Moreover, Plaintiff's response to Commerce's request for documentation regarding Plaintiff's freight transactions with its affiliate indicated that Plaintiff's affiliate provided inland freight from both of its plants. Suppl. Sec. B & C Resp. at 21 (stating "Hyundai Steel provides the requested documents at Exhibit S-26 (Dangjin Factory to Dangjin Port) and Exhibit S-27 (Suncheon Factory to Dangjin Port)").

constructed export price, but Commerce lacks enough data to determine whether the difference affects price comparability, Commerce will grant a CEP offset. *See* 19 U.S.C. § 1677b(7)(B); 19 C.F.R. § 351.412(f); *Micron Tech., 243* F.3d at 1305. Commerce grants a CEP offset by deducting the indirect selling expenses included in the normal value "up to the amount of indirect selling expenses deducted in determining constructed export price." 19 C.F.R. § 351.412(f); *see also* 19 U.S.C. § 1677b(a)(7)(B).

The party seeking a CEP offset bears the burden of establishing that the differences in selling functions performed in the home and U.S. markets are "substantial." *Sucocitrico Cutrale Ltda. v. United States*, Slip-Op. 12-71, 2012 WL 2317764, at *5 (CIT June 1, 2012);[10] *see also* 19 C.F.R. § 351.401(b) (the burden of establishing entitlement to a particular adjustment rests with the party in possession of the relevant information).

### B. The Court's Remand Order and Commerce's Remand Redetermination

In the *Final Determination*, Commerce examined the four selling function categories that it typically considers when analyzing whether to grant a CEP offset: (1) sales and marketing; (2) freight and delivery services; (3) inventory maintenance and warehousing; and (4) warranty and technical support. I&D Mem. at 87. With respect to the U.S. market, Plaintiff made sales through three channels of distribution: EP sales

---

[10] Pursuant to Commerce's regulations,
> The [agency] will determine that sales are made at different levels of trade if they are made at different marketing stages (or their equivalent). Substantial differences in selling activities are a necessary, but not sufficient, condition for determining that there is a difference in the stage of marketing. Some overlap in selling activities will not preclude a determination that two sales are at different stages of marketing.

19 C.F.R. § 351.412(c)(2).

Case 1:16-cv-00228-MAB   Document 102   Filed 02/26/19   Page 12 of 14
Court No. 16-00228                                                                                          Page 12

through unaffiliated Korean distributors (Channel 1); CEP sales through its affiliates—Hyundai Steel America, Hyundai Corporation, and HCUSA—to unaffiliated processors (Channel 2); and CEP sales through its affiliate Hyundai Steel America to unaffiliated and affiliated processors (Channel 3). *Id.* Plaintiff performed selling functions in all four categories at the same relative level of intensity for its U.S. sales through Channels 1 and 3. *Id.* at 88. Commerce also determined that Plaintiff's sales to the home market were made at the same level of trade as Plaintiff's U.S. sales through Channels 1 and 3. *Id.* With respect to Plaintiff's Channel 2 U.S. sales, Commerce determined that Plaintiff provided selling functions in only three of the four selling categories—sales and marketing; freight and delivery services; and inventory maintenance and warehousing—and found that they were at a less advanced level of trade than Channel 1 and Channel 3 sales. *Id.* This finding notwithstanding, Commerce concluded that

> Hyundai Steel's home market sales during the POI were made at a same [level of trade] as its CEP sales. Also, Hyundai Steel's home market [level of trade] is not at a more advanced stage of distribution than its CEP [level of trade] through Channels 1, 2, and 3, and thus, no [level of trade] adjustment is possible. Consequently, there is no basis for considering a CEP offset with respect to Hyundai Steel. Accordingly, we have not granted a CEP offset, pursuant to section [19 U.S.C. 1677b(a)(7)(B)].

*Id.* at 89. The court remanded Commerce's conclusion as internally inconsistent in its treatment of sales through Channel 2. *Hyundai Steel*, 319 F. Supp. 3d at 1357.

On remand, Commerce re-examined the record and concluded that all three of Plaintiff's U.S. sale channels represent the same level of trade. Remand Redetermination at 10. Commerce explained that although it had concluded in the *Final Determination* that, for Channel 2 sales, Plaintiff did not provide selling functions in the fourth category—warranty and technical support—on remand, it found that Plaintiff "did,

in fact, report that it provided technical assistance for its Channel 2 U.S. sales, as well as its Channel 1 and Channel 3 U.S. sales." *Id.* at 11.  On that basis, Commerce found that Hyundai Steel's U.S. sales through Channels 1, 2, and 3 were all at the same level of trade and, when compared to Plaintiff's home market level of trade, there was "no meaningful difference." *Id.* at 11-12.

### C. Commerce's Remand Redetermination is Sustained

Plaintiff argues that Commerce erred in declining to provide a CEP offset for Channel 2 sales because "the record confirms that U.S. Channel 2 is at a less advanced level of trade than the remaining channels." Pl.'s Opp'n Cmts. at 14.  Plaintiff asserts that it performs "minimal selling functions" for its Channel 2 U.S. sales because "HCUSA performs the bulk of these selling functions." *Id.*  Moreover, Plaintiff asserts that Commerce "overstates the extent of the [category 4] services in [Channel 2] as there are no warranty services." *Id.* at 14-15.

Here, Commerce determined that Plaintiff performed selling functions across all four categories and determined that any differences in those categories were minimal. Remand Redetermination at 11-12.  Substantial evidence supports that finding.  *See* Hyundai Steel Suppl. Sec. A Resp. (Nov. 18, 2015) ("Sec. A Resp."), Ex. SA-13, CR 142, PR 195, CJRA Tab 10, PJRA Tab 10 (showing that Plaintiff performed six out of 14 selling functions (spanning across all four categories) for its U.S. Channel 2 sales with the same level of intensity as its home market sales, and although Plaintiff did not provide warranty services in the U.S. market, it provided this service in a low level of intensity in its home market).  "The CEP offset provision applies in situations in which there is a substantial difference in the level of trade." *Sucocitrico Cutrale*, 2012 WL

2317764, at *6 (citing *Micron Tech*, 243 F.3d at 1305).  Based on a review of evidence on record, Commerce reasonably concluded that that the differences here were not substantial.

## CONCLUSION

For the foregoing reasons, the court finds that the Remand Redetermination complies with the court's remand order, is supported by substantial evidence, and is otherwise in accordance with law.  Judgment will enter accordingly.

/s/　　Mark A. Barnett
　　　　Judge

Dated: February 26, 2019
　　　　New York, New York